IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN F. CHAMPAGNE and GARY A. CHAMPAGNE,

    Plaintiffs,

  v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.

No. C 06-05425 JSW

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

    Now before the Court is the motion for summary judgment filed by Defendants City and County of San Francisco, the San Francisco Department of Building Inspection, the San Francisco Fire Department, and Priscilla S. Gates, as an inspector for the San Francisco Fire Department (collectively "Defendants"). Having considered the parties pleadings, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS Defendants' motion for summary judgment.

## BACKGROUND

    Plaintiffs Gary and John Champagne, brothers and beneficiaries of a trust that owned 101 Mayfair Drive, an apartment building in San Francisco, bring this action to federal court for the alleged violation of their Fourteenth Amendment rights in addition to a variety of state law claims. On April 1, 2005, Gary Champagne had a three-day notice to perform covenant or quit

1 served on Michael J. Vlastone, a tenant who was allegedly using his garage space in an
2 improper manner. (Declaration of Scott Weiner ("Weiner Decl."), Ex. E.) After expiration of
3 the notice, Gary Champagne filed an eviction lawsuit against Vlastone in Superior Court,
4 containing a single cause of action for breach of the lease. (*Id.*)

5     During the course of the eviction suit, and upon advice of counsel, Plaintiffs called the
6 Fire Department and the Department of Building Inspection ("DBI") and requested inspection
7 of the garage area. (*Id.*, Ex. G at 76:13-78:1; Ex. H at 31:23-32:2.) In response to the calls,
8 Defendant Fire Inspector Priscilla Gates issued a notice for three code violations, one DBI
9 inspector issued a notice of correction stating corrective action was necessary for electrical
10 wiring, and another DBI inspector issued a notice of violation for two ostensible code
11 violations. (Complaint at ¶¶ 12-15, Exs. 1-5.) The notices indicated that the violations could be
12 abated by corrective action. (*Id.*)

13     On May 23, 2005, shortly after the inspectors had issued the violations, Plaintiffs had a
14 second three-day notice to evict served on the tenant and thereafter added a second cause of
15 action "premised upon ordinances and statutes" and incorporating the second three-day notice.
16 (Weiner Decl., Ex. E.)

17     On May 26, 2005, the DBI electrical inspector reinspected the garage and found the
18 electrical violation had been corrected and abated the violation. (*Id.*, Ex. P at 46:13-58:18.)

19     On June 1, 2005, Inspector Gates reinspected the garage and concluded that two of the
20 three violations had been corrected and she therefore abated those violations. (*Id.*, Ex. I at
21 48:22-49:20.) In early August 2005, Fired Department Lt. Tyrone Pruitt discussed the
22 remaining violation related to change of use with Inspector Gates and determined that Gates had
23 issued the violation in error. Shortly thereafter, the Department abated this violation as well.
24 On August 4, 2005, the Department issued a letter rescinding the prior three notices of
25 violation. (Complaint at ¶ 16, Ex. 6.) At the tenant's request, on August 5, 2005, Inspector
26 Gates signed a declaration prepared by the tenant which retroactively rescinded the prior
27 notices. (*Id.* at ¶ 17, Ex. 7.)

28

2

1 In late July 2005, a DBI deputy director reinspected the garage and concluded that the
2 inspector had incorrectly issued the May violation and, after consultation, abated the violation.
3 (Weiner Decl., Ex. L at 4:12-5:6, 29:1-29:5, 70:18-78:3; Ex. M at 4:10-23, 15:6-14, 22:7-25,
4 31:19-22.)

5 On August 3, 2005, the Superior Court granted the tenant's motion for summary
6 adjudication on the second cause of action in the eviction suit – the cause of action for code
7 violation based on the City inspections. (*Id.*, Ex. E.)

8 On August 8, 2005, just days after learning of many of the violation abatements and
9 rescissions, the eviction lawsuit was due to proceed. Although the Superior Court judge was
10 not available to conduct the trial, she offered to mediate the matter and, on August 11, 2005,
11 Plaintiffs and their tenant settled the eviction lawsuit in exchange for $150,000 and the tenant's
12 agreement to vacate the premises. (*Id.*, Exs. A, B; Declaration of Steven B. Taxman ("Taxman
13 Decl."), Ex. 25.) Plaintiffs also assert that they incurred approximately $100,000 in attorney's
14 fees litigating the eviction matter. (Taxman Decl., Ex. 30.)

15 Defendants move for summary judgment on all of Plaintiffs' claims.

**ANALYSIS**

**A. Legal Standard on Motion for Summary Judgment.**

18 A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ.
19 P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to
20 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
21 genuine issue as to any material fact and that the moving party is entitled to judgment as a
22 matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence
23 for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,
24 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case.
25 *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the
26 evidence or make credibility determinations, and is required to draw all inferences in a light
27 most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.
28 1997).

3

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### B. Plaintiffs Cannot Maintain a Constitutional Claim.

Plaintiffs allege in their first cause of action violation of their Fourteenth Amendment due process rights. Plaintiffs allege that "Defendants' conduct and acts as alleged herein violated Plaintiffs' rights and interests to their property without procedural and substantive due process of law. Defendants' wrongful acts were and are in violation of plaintiffs [*sic*] rights under the Fourteenth Amendment of the United States Constitution. Defendants' tortuous [*sic*] conduct toward Plaintiffs also violated Plaintiffs' Fourteenth Amendment's [*sic*] rights to acquire and hold property." (Complaint at ¶ 23.) Plaintiffs contend that they had

> a Constitutional right to use and manage their property for the purpose of renting apartments. Plaintiffs also contend that Defendants deprived them of this right, without substantive and procedural due process, by capriciously, arbitrarily and fraudulently interfering with their right to use and manage their property by retroactively rescinding previously issued valid notices of violation. Plaintiffs had a property interest in managing their property and preventing their tenant from maintaining dangerous and illegal conditions that violated building and fire codes, as well as the lease agreement. Plaintiffs also had a Constitutional due process right to manage their property without Defendants' arbitrary, capricious and fraudulent interference.

(Opp. Br. at 10.)

4

While Plaintiffs did maintain an interest in the management of their property, Plaintiffs had no constitutional entitlement to have the City and its inspectors assist Plaintiffs in the management of their property by citing the property or maintaining the code violations in place. Under California law, decisions whether to cite or not to cite property for code violations are highly discretionary. *See, e.g., Fox v. County of Fresno*, 170 Cal. App. 3d 1238, 1243-45 (1985). Although a City regulation that fails to serve any legitimate purpose could be so arbitrary or irrational as to run afoul of the Due Process Clause, the Court finds that there is no evidence of any such arbitrary application of an ordinance without legitimate purpose at play here. *See Action Apartment Association v. Santa Monica Rent Control Board*, 509 F.3d 1020, 1026 (9th Cir. 2007) (citing *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005).) The Court finds that the City's conduct did not deter Plaintiffs from managing their property in the manner in which they deemed appropriate. Plaintiffs still maintained their ownership interest in the apartment building, they still rented out units, they still had whatever rights were afforded to them under California or San Francisco law to evict the tenant, and they were still able to sell the apartment building without any detriment to the value of their property. Defendants, by the conduct alleged in this case, did not disturb those rights.[1]

Because the Court finds that the City's conduct did not deprive Plaintiffs of any of their Constitutional rights, it is not necessary to reach the analysis of whether the City's conduct "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). To meet the standard required to make a showing of violation of one's substantive due process rights, the conduct must have been "intended to injury in some way unjustifiable by any government interest." *Id.* "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (emphasis in original). While the Court need not reach the issue because there was no deprivation of a property interest, the Court nevertheless

---

[1] Furthermore, to the extent Plaintiffs complain that the City's inspectors would not testify to what they contend were previously valid code violations, under California law, Plaintiffs cannot maintain a cause of action for failing to provide favorable testimony or for failing to preserve evidence for Plaintiffs' eviction trial. *See, e.g., Temple Community Hospital v. Superior Court*, 20 Cal. 4th 464, 472-75 (1999).

5

finds that the evidence does not form a basis for the allegations of deliberate and fraudulent conduct meant to deprive Plaintiffs of their property. *See, e.g., Aguilera v. Baca*, 510 F.3d 1161, 1174 (9th Cir. 2007) (holding that state action, even when made as a improper punishment, "does not shock the conscience or run counter to the decencies of civilized conduct..."); *see also Dodd v. Hood River County*, 59 F.3d 852, 964 (9th Cir. 1995) (holding that, although given some assurance that building would be permitted, landowners could not maintain a substantive due process claim where they purchased a home only to have county change the zoning and deny them a permit).

In addition, the Court finds that Plaintiffs did not suffer a procedural due process violation as Defendants had no obligation to provide any process at all given that Plaintiffs had no property interest in the notices of violation. *See, e.g., Brewster v. Board of Education*, 149 F.3d 971, 982 (9th Cir. 1998) (holding that a procedural due process claim requires a deprivation of a constitutionally protected interest and a denial of adequate procedural protections.) Regardless, Plaintiffs were put on notice that the code violations were subject to abatement upon reinspection and Plaintiffs were given the opportunity to lobby the revocations before they sustained any alleged damage.[2]

Accordingly, Plaintiffs cannot maintain a cause of action for violation of the Fourteenth Amendment to the United States Constitution and the Court GRANTS summary judgment as to the first claim for relief.

**C.    Plaintiffs Cannot Maintain Their State Law Claims.**

Plaintiffs allege causes of action for: violation of the California Constitution, intentional misrepresentation, negligent misrepresentation, concealment and suppression of material facts, concealment for failure to make full and fair disclosure, civil conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress and negligence. (Complaint at ¶¶ 26-77.)

---

[2] Plaintiffs could have, but elected not to, seek a writ of mandate in the underlying state action before settling their eviction lawsuit. *See* Cal. Code Civ. Proc. § 1085(a).

### 1. Plaintiffs Cannot Maintain Claim for Violation of California Constitution.

Plaintiffs' claim for violation of the California Constitution fails for the same reasons their Fourteenth Amendment claim fails. *See, e.g., Russell v. Carleson*, 36 Cal. App. 3d 334, 342 (1974) (holding that provisions of the state Constitution are substantially the equivalent of portions of the Fourteenth Amendment and evoke substantially the same standards as those prescribed by the federal Constitution). Also, unlike the federal due process claim, the California Due Process Clause does not create a private right of action for money damages. *See Katzberg v. Regents of the University of California*, 29 Cal. 4th 300 (2002).

Accordingly, Plaintiffs cannot maintain a cause of action for violation of the California Constitution and the Court GRANTS summary judgment as to the second claim for relief.

### 2. Plaintiffs Cannot Maintain Fraud Claims.

In their third through sixth claims for relief, Plaintiffs allege various forms of fraud for misrepresentation and concealment against all Defendants. To establish a cause of action for fraud, Plaintiffs must prove a misrepresentation with knowledge of its falsity or that it was made without reasonable grounds for believing it to be true, intent to defraud, justifiable reliance, and resulting damages. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 838 (1996); *see also Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

First, Plaintiffs do not proffer evidence sufficient to demonstrate that they reasonably relied on any representation or misrepresentation to their detriment. Inspector Gates issued the notices of violation after Plaintiffs filed their eviction lawsuit. The Superior Court dismissed the code violation cause of action from the eviction lawsuit prior to the revocation of the notices. There is no evidence that Plaintiffs reasonably relied on Inspector Gates' inspection notices or their revocations to their detriment. On this basis, Plaintiffs may not maintain a cause of action for fraud against Defendants.

Second, Plaintiffs have failed to demonstrate a causal connection between Defendants' alleged fraudulent conduct and the damages Plaintiffs sustained by litigating their eviction lawsuit and settling the case with the tenant. The causal connection relies on the supposition that without the revocation of the code violations, Plaintiffs would have litigated the eviction

7

1 lawsuit successfully without settling during trial, would have been permitted to introduce
2 evidence of the code violations although the code violation cause of action had been dismissed,
3 would have obtained an award of attorneys' fees, and that they would have collected their fees
4 from the tenant. Plaintiffs' claim for damages is entirely speculative because the causal
5 connection between the fraud allegations and those damages is attenuated and relies on a series
6 of speculative suppositions that the Court may not make. *See Thompson v. Halvonik*, 36 Cal.
7 App. 4th 657, 663 (1995) (appellate court affirmed summary judgment in light of speculative
8 nature of harm where plaintiff contended that he received a lower settlement in underlying
9 matter in which his attorney delayed in pursuing the case. The court held that "actual harm
10 from [the attorney's] conduct is only a subject of surmise, given the myriad of variables that
11 affect settlements"). On this basis, Plaintiffs may not maintain a cause of action for fraud
12 against Defendants.

13 Lastly, and perhaps most importantly, Plaintiffs may not maintain their fraud claims
14 against Defendants because all defendants beside Inspector Gates enjoy absolute immunity from
15 liability for decisions and representations regarding the subject inspections. *See* Cal. Gov't
16 Code §§ 818.2, 818.6, 821 (inspection immunity for a public entity is absolute and the City and
17 its employees are not liable for injury caused by misrepresentation by an employee of a public
18 entity, whether or not such misrepresentation is negligent or intentional). Plaintiffs concede
19 that the public entity defendants are shielded from liability, but argues that Defendant Gates
20 remains liable because she acted with "actual fraud, corruption, or actual malice." *See* Opp. Br.
21 at 21 (citing Cal. Gov't Code § 822.2; *Maters v. San Bernardino County Employees Retirement*
22 *Assn.*, 32 Cal. App. 4th 30, 42 (1995) ("in order to support a cause of action for fraud against
23 the public employees, applicant must allege, in addition to the ordinary elements of common
24 law deceit, motivation by corruption or actual malice.")). Defendant Gates is entitled to
25 qualified immunity for the claims against her based on her discretionary conduct. There is
26 simply no evidence in the record from which the Court may find that Inspector Gates acted with
27 actual malice, fraud or corruption. On this basis, Plaintiffs may not maintain a cause of action
28 for fraud against and of the Defendants.

8

Accordingly, based on lack of reasonable reliance, lack of causation and Defendants' immunity, Plaintiffs cannot maintain their causes of action for violations sounding in fraud and the Court GRANTS summary judgment as to the third through sixth claims for relief.

### 3. Plaintiffs Cannot Maintain Civil Conspiracy Claim.

Conspiracy is not an independent cause of action, "but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). Because the underlying tort claims alleged by Plaintiffs fail on their merits, they cannot maintain a cause of action for conspiracy. Accordingly, the Court GRANTS summary judgment as to the seventh cause of action.

### 4. Plaintiffs Cannot Maintain Emotional Distress and Negligence Claims.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Cole v. Fair Oaks Fire Dept.*, 43 Cal. 3d 148, 155 n.7 (1987). This tort imposes liability for "conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress." *Id*.

The Court does not find any evidence in the record to sustain the claim that Defendants' discretionary conduct regarding the inspection notices or their revocation rose to the level of outrageous conduct. In addition, for the same reasons the fraud causes of action fail, Plaintiffs have also failed to establish a triable issue as to actual or proximate cause for their alleged damages. On this basis, Plaintiffs may not maintain a cause of action for intentional infliction of emotional distress against Defendants.

In contrast to intentional infliction, "[t]he law of negligent infliction of emotional distress in California is typically analyzed ... by reference to two 'theories' of recovery: the 'bystander' theory and the 'direct victim' theory." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071 (1992). In this case, it is clear that Plaintiffs allege they are direct victims. In such cases,

9

1 California courts view negligent infliction of emotional distress not as an independent tort but,
2 rather, as the tort of negligence to which the traditional elements of a negligence claim apply.
3 *Id.* at 1072 (citing *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583, 588
4 (1989)).

5 Because California law does not impose a duty on government entities to enforce
6 building codes or to abate nuisances, Defendants had no duty to maintain the notices of
7 violation in place. *See Fox*, 170 Cal. App. 3d at 1243-45. This defect pervades and defeats
8 Plaintiffs' claims for both negligent infliction of emotional distress and negligence.

9 Accordingly, Plaintiffs cannot maintain a cause of action for intentional infliction of
10 emotional distress, negligent infliction of emotional distress, or negligence and the Court
11 GRANTS summary judgment as to the eighth through tenth causes of action.

### D. Federal Rule of Civil Procedure 56(f) Request is Denied.

By declaration submitted after completion of the briefing on the motion for summary judgment and without leave of Court, Plaintiffs request that the Court deny Defendants' motion as premature pursuant to Federal Rule of Civil Procedure 56(f). Plaintiffs argue that discovery was not complete at the time Defendants first filed their motion for summary judgment and that outstanding discovery was necessary to obtain specific information which might preclude summary judgment. *See Church of Scientology of San Francisco v. International Revenue Service*, 991 F.2d 560, 562 (9th Cir. 1993).

Defendants' motion for summary judgment was heard and decided after the close of discovery. The Court finds that the discovery uncovered after the briefing on the motion and prior to the close of discovery was not essential to oppose the motion for summary judgment. *See United States Cellular Investment Co. of Los Angeles, Inc. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 939 (9th Cir. 2002) (holding that the essential elements required for a Rule 56(f) requests are (1) that the party could not obtain information, and (2) that the information is essential to oppose the summary judgment motion). Neither of the two witnesses who were deposed after the close of briefing on this motion proffered significant testimony that would have affected the analysis of Plaintiffs' claims. On this basis, the Court DENIES Plaintiffs' Rule 56(f) request.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Plaintiffs' Rule 56(f) request is DENIED.

**IT IS SO ORDERED.**

Dated: May 5, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE